490 S.E.2d 714

**In re WILLIAM JOHN R., Dana R., and Sidney L., Jr.**

**No. 23888.**

Supreme Court of Appeals of West Virginia.

Submitted June 24, 1997.

Decided July 11, 1997.

Dissenting Opinion of Justice Starcher July 17, 1997.

Concurring Opinion of Chief Justice Workman July 22, 1997.

---

David L. Zehnder, Public Defender Corporation, Moundsville, for Evelyn R.

Darrell V. McGraw, Jr., Attorney General, Joanna Bowles, Assistant Attorney General, Charleston, for the West Virginia Department of Health and Human Resources.

John E. Artimez, Jr., Artimez & Gellner, Moundsville, guardian ad litem.

PER CURIAM:

This case is before this Court upon an appeal from the final decision of the Circuit Court of Marshall County, West Virginia, entered on June 25, 1996. This case concerns the improvement period granted to the

appellant, Evelyn R., following an adjudication that she had abused and neglected her two minor children, William John R. and Dana R.[1] Pursuant to the final order, the circuit court terminated the improvement period and granted permanent guardianship of the children to the West Virginia Department of Health and Human Resources (hereinafter "Department").

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon a careful consideration of the record, and for the reasons stated below, this Court holds that the circuit court acted within its discretion in terminating the improvement period and granting permanent guardianship of the children to the Department. Moreover, based upon the representation of counsel to this Court concerning the commitment of the Kanawha County foster parents to the children, we further hold that William John R. and Dana R. be permanently placed in that foster home, i.e., the home of Mr. and Mrs. M., where the children have resided since 1994, subject to the periodic monitoring by the Department as required by law. In addition, however, this Court remands this case to the circuit court upon the question of visitation between the appellant and the children.

### I.

The appellant is the natural mother of William John R., born on February 26, 1988, and Dana R., born on September 12, 1989. The appellant, the children and her husband Sidney L., Sr., lived in Moundsville, West Virginia. The appellant's step-child, Sidney L., Jr., the son of Sidney L., Sr., also lived in the home.

Both William John R. and Dana R. are "special needs children." Both children are mildly mentally retarded or impaired. Moreover, William John R. has been diagnosed

with attention deficit/hyperactivity disorder. Dana R., on the other hand, has been diagnosed with post-traumatic disorder symptoms (arising from a history of child abuse) and behavioral problems. Consequently, as the record indicates, both children are in need of continuing, specialized care. Unfortunately, the appellant also suffers from significant mental problems, including mild mental retardation, various personality disorders, depression and anxiety.

On February 17, 1994, following the monitoring of the family for some period of time, the Department filed a petition in the circuit court alleging that the appellant and her husband had abused and neglected William John R., Dana R. and Sidney L., Jr. *W. Va.Code*, 49–6–1 [1992]. Upon review, the circuit court granted temporary custody of the children to the Department, appointed counsel for the appellant and her husband and appointed a guardian ad litem to represent the children. Soon after, the appellant and her husband separated, and divorce proceedings were instituted. As a result, Sidney L., Jr., was allowed to remain with his father, and they were, ultimately, dismissed from the proceedings.[2]

In March 1994, the circuit court granted the appellant a pre-adjudicatory improvement period and supervised visitation with William John R. and Dana R. At that time, the two children were in foster care in the Moundsville area. However, in September 1994, William John R. and Dana R. were moved to a foster home in Kanawha County, West Virginia, where they began to receive specialized care concerning their special needs. The moving of the children to Kanawha County placed them several hours drive from the appellant. As a result, the opportunities for visitation between the appellant and her children were significantly reduced.

---

1. We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. *In the matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Following the separation of the appellant and Sidney L., Sr., and the institution of divorce proceedings, Sidney L., Jr., who is considerably

older than William John R. and Dana R., remained with his father. Thereafter, in September 1995, the circuit court entered an order dismissing both Sidney L., Jr., and his father from these proceedings. The September order specifically noted that Sidney, L., Jr., and his father, had successfully completed the goals set for them by the Department.

Weekly visits between the appellant and her two children became monthly visits.

Thereafter, in August 1995, the circuit court conducted an adjudicatory hearing upon the abuse and neglect petition. *W. Va.Code*, 49–6–2 [1992]. During the hearing, the evidence indicated (1) that the appellant, her husband, and the children exercised little or no personal hygiene in the home,[3] (2) that the children were not adequately fed, (3) that the home was dirty, roach infested, and had dog feces and urine upon the floor, (4) that the appellant had, on one occasion, struck Dana R. with a stick and (5) that, on other occasions, the appellant had, according to Dana, burned her with a cigarette and pulled out a section of Dana's hair. In addition, evidence was adduced at the hearing to the effect that, in one instance while at preschool, Dana displayed knowledge of sexual matters inappropriate for her age.

Following the adjudicatory hearing, the circuit court, on September 14, 1995, entered an order finding that the appellant and her husband had abused and neglected William John R. and Dana R. An appeal to this Court from that order was refused on May 29, 1996. *W. Va.Code*, 49–6–2(e) [1992].

In November 1995, the circuit court granted the appellant a post-adjudicatory improvement period, over the objection of the Department and the guardian ad litem. In addition, the circuit court directed the Department to develop a family case plan concerning the appellant and her children, and the Department was further directed to locate an appropriate foster home for William John R. and Dana R. "as close as possible" to Moundsville.

Subsequently, the circuit court entered an order in February 1996 stating that the Department should continue in its effort to locate local, specialized foster care for the children. In that order, however, the circuit court observed that "there is no appropriate foster placement in this area at this time, to meet the children's needs." Thereafter, the guardian ad litem moved to terminate the

post-adjudicatory improvement period, and, in May and June 1996, the circuit court conducted evidentiary hearings.

The testimony received in evidence during those hearings was adduced from two witnesses, i.e., Shawna Bowles, a child therapist, and Dr. Charles William Hewitt, a clinical psychologist. Ms. Bowles, who had observed the appellant with the children, indicated that the appellant did not possess the skills necessary to work with William John R. and Dana R. More specifically, Dr. Hewitt, who had evaluated the appellant in March 1994 and in April 1996, indicated that no amount of parenting classes or on-the-job training could enable the appellant to independently manage the children. Consequently, according to Dr. Hewitt, it would be "in the best interest of the children to go into permanent guardianship with visits with their mother." Indicating that William John R. and Dana R. were "getting better," Dr. Hewitt testified that "[t]he important thing is to just be sensible about adapting the visiting schedule with the realities of where the child is placed."

Following the May and June 1996 hearings, the circuit court entered the final order of June 25, 1996. Although observing that the Department had failed to develop the family case plan previously ordered, the circuit court found "no reasonable likelihood" that William John R. and Dana R. could be reunited with the appellant. As a result, the circuit court terminated the post-adjudicatory improvement period and granted permanent guardianship of the children to the Department. In addition, the circuit court, without elaboration, ordered the Department to provide visitation between the appellant and the children. Although permanent guardianship was granted to the Department, the circuit court did not specifically terminate the appellant's parental rights to William John R. and Dana R.

In May 1997, this Court entered an order directing that the children not be moved

---

**3.** With regard to personal hygiene, Jennifer Horton Bloch, a case aid services worker, testified as follows: "The children were very dirty, had a very prominent odor to them. Their clothes were often ill-fitting and food all over them. When we informed [the appellant] that she needed to do some hygiene with her children, there was often soap left in their hair."

from their Kanawha County placement, pending this appeal.

## II.

■ In syllabus point 1 of *In the Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held that, although conclusions of law are subject to a *de novo* review, a circuit court's findings of fact, in a child abuse and neglect case, shall not be set aside unless clearly erroneous. *See also* syl. pt. 1, *State ex rel. Virginia M. v. Virgil Eugene S.,* 197 W.Va. 456, 475 S.E.2d 548 (1996). In this case, however, the issue of whether abuse and neglect occurred is not before this Court in this appeal. That issue was adjudicated by the circuit court in 1995, and, as indicated above, an appeal from a finding of abuse and neglect was refused by this Court in May 1996. Rather, the issue before us concerns the termination of the appellant's subsequent improvement period and the granting of permanent guardianship to the Department of Health and Human Resources. Therefore, we acknowledge the more general standard of review, comparable to that expressed in *Tiffany Marie S.,* set forth in syllabus point 1 of *McCormick v. Allstate Insurance Company,* 197 W.Va. 415, 475 S.E.2d 507 (1996):

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

*See also State v. Jarvis,* 199 W.Va. 38, 43, 483 S.E.2d 38, 43 (1996).

As stated above, the circuit court, in terminating the improvement period, found "no reasonable likelihood" that William John R. and Dana R. could be reunited with the appellant. As provided in *W. Va.Code,* 49–6–5(a)(6) [1992], permanent custody or guardianship of an abused or neglected child may be granted to the Department "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child [.]" In particular, *W. Va.Code,* 49–6–5(b) [1992], states:

> As used in this section, 'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' shall mean that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse and neglect, on their own or with help. Such conditions shall be deemed to exist in the following circumstances, which shall not be exclusive:
>
> . . . .
>
> (6) The abusing parent or parents have incurred emotional illness, mental illness or mental deficiency of such duration or nature as to render such parent or parents incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills.

■ In this case, the appellant contends that the granting of permanent guardianship of William John R. and Dana R. to the Department constituted error because, inasmuch as her contact with the children necessarily diminished after they were moved to Kanawha County, she was denied a meaningful improvement period. Specifically, citing *State ex rel. Department of Human Services v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987), the appellant suggests that, in the absence of compelling circumstances, she was entitled to a more appropriate improvement period as a matter of right.[4] On the other hand, contending that the rights of the appellant were subordinate to the interests of her children, the guardian ad litem asserts (1) that it is undisputed that William John R. and Dana R. are "special needs children" requiring specialized care, (2) that the move to Kanawha County was in the children's best interests and (3) that the appellant could

---

4. *W. Va.Code,* 49–6–2, provides for improvement periods in child abuse and neglect cases, and, referring to that statute, syllabus point 2 of *Cheryl M.,* states: "W. Va.Code, 49–6–2(b) (1984), permits a parent to move the court for an improvement period which shall be allowed unless the court finds compelling circumstances to justify a denial."

never, under any circumstances, independently manage them. Thus, citing *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), the guardian ad litem indicates that the circuit court was not compelled to "exhaust every speculative possibility of parental improvement" prior to granting permanent guardianship to the Department.[5] The Department contends before this Court that the equities require either the restoration of the appellant's improvement period or the granting of meaningful visitation to the appellant.

■ Recently, in syllabus point 3 of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), this Court held: "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Here, the circuit court acknowledged that the placement of William John R. and Dana R. in specialized foster care in Kanawha County significantly reduced the contacts between the children and the appellant during both the pre-adjudicatory and post-adjudicatory improvement periods. Moreover, the circuit court noted that the Department of Health and Human Resources failed to develop the family case plan previously ordered.[6] Clearly, those circumstances have been detrimental to the appellant in this case. However, as the guardian ad litem correctly points out, it is undisputed that William John R. and Dana R. are "special needs children." Importantly, as the record before us demonstrates, those children are currently receiving in Kanawha County the continuing, specialized care they need. As the circuit court observed in 1996: "[T]here is no appropriate foster placement in this [Moundsville] area at this time, to meet the children's needs." An examination of the record reveals that the Department made attempts to locate an appropriate, local foster home throughout the history of this litigation.

Moreover, the evidence indicates that the appellant suffers from an "emotional illness, mental illness or mental deficiency of such duration or nature as to render ... [her] incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills" within the meaning of *W. Va.Code*, 49-6-5(b) [1992]. The appellant has been diagnosed with significant mental problems, including mild mental retardation, various personality disorders, depression and anxiety, and, as stated above, Dr. Hewitt indicated that no amount of parenting classes or on-the-job training could assist her with regard to the children.[7] In fact, during oral argument before this Court, the guardian ad litem stated that the appellant could not grasp the concept of the nurturing parent, and counsel for the appellant acknowledged that the appellant needs help concerning the children. As stated above, the family had been monitored by the Department prior to the filing of the abuse and neglect petition in February 1994. As the April 29, 1996, report of Dr. Hewitt explains:

> [The appellant] can take care of her everyday adaptive needs, including personal hygiene, most of the time, but she is easily exploitable and needs someone to take care of her money. When she isn't supervised she sometimes neglects her personal hygiene.... Her memory processes are consistent with mild mental retardation, she has a poor sense of time, and she is an unreliable reporter of many important events in her life, and she certainly doesn't report abuse and neglect matters accurately or with any meaningful insight.... Her children have special needs, but spe-

---

5. In *Carlita B.*, 185 W.Va. at 629, 408 S.E.2d at 381, this Court cited syllabus point 1 of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980), which states in part: "[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened."

6. As stated in *W. Va.Code*, 49-6-2(b) [1992], an order entered by a circuit court granting an improvement period shall require the Depart-

ment "to prepare and submit to the court a family case plan[.]"

7. Dr. Hewitt's report dated March 27, 1994, states: "[The appellant] is not empathetic, and this is one of the reasons she finds it very difficult to protect her children. Her lack of empathy is associated with her highly neurotic style which probably leads to histrionic and hysterical episodes."

cial needs aside, she is not able to independently manage the ordinary needs of her children or any other children.... [I]n spite of the bonding, the children are, in their own way, requesting protection from their mother, though they do not articulate their concerns maturely.... Because of [the appellant's] irremediable difficulties related to child rearing, and because there is a significant bond between [the appellant] and her children, and because [the appellant's] children need to be protected and their special needs managed, it is recommended that the children be placed in permanent foster care, that [the appellant] be allowed periodic visits with them, and that the children be told in therapy that they will be in permanent care and allowed to have contact with their mother [.]

Although this Court does not sanction the reduction in contacts between the appellant and William John R. and Dana R., occasioned by the placement of those children in Kanawha County, and does not sanction the failure to develop a family case plan, it is clear that the childrens' special needs are currently being addressed in Kanawha County (in the absence of an appropriate foster home in the Moundsville area) and the appellant, as well, has special needs within the meaning of *W. Va.Code*, 49–6–5(b) [1992], rendering her incapable of adequately parenting the children. The circumstances herein, thus, lead this Court to the inexorable conclusion that the avenues of justice, in this difficult case, were not narrowed by the final order of June 25, 1996. Accordingly, this Court is of the opinion that the circuit court acted within its discretion in terminating the improvement period and granting permanent guardianship of William · John R. and Dana R. to the Department of Health and Human Resources. In that respect, therefore, the final order is affirmed. Furthermore, based upon the representation of counsel to this Court concerning the commitment of the Kanawha County foster parents to the children, we further hold that William John R. and Dana R. be permanently placed in that foster home, i.e., the home of Mr. and Mrs. M., where the children have resided since 1994, subject to periodic monitoring by the Department as required by law.

The problem of visitation, however, is, no doubt, derivative of the absence of the family case plan. Moreover, the circuit court, without elaboration, simply ordered the Department to provide visitation between the appellant and the children.

As this Court observed, generally, in syllabus point 5 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995):

When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

*See also In re Danielle T.*, 195 W.Va. 530, 535, 466 S.E.2d 189, 194 (1995).

In this case, the record contains evidence of bonding between the appellant and the children. Moreover, inasmuch as the above principle of *In re Christina L.* was expressed in the context of the termination of parental rights, here, where the appellant's parental rights were not specifically terminated, visitation, *a fortiori*, is warranted. We note, however, that the visitation exercised by the appellant, during the proceedings below, was supervised.

Upon all of the above, therefore, this Court affirms the final order of the Circuit Court of Marshall County, entered on June 25, 1996, to the extent that the appellant's improvement period was terminated and permanent guardianship of William John R. and Dana R. was granted to the West Virginia Department of Health and Human Services. Furthermore, William John R. and Dana R. shall be permanently placed in their Kanawha County foster home, i.e., the home of Mr. and Mrs. M., where the children have resided since 1994, subject to periodic moni-

toring by the Department as required by law. However, we remand this case to the circuit court for the development and execution of a plan of supervised visitation between the appellant and the children. Upon remand, the circuit court shall consider and establish a time, no later than which the Department shall submit the visitation plan for the circuit court's review, in order for the appellant to soon have appropriate contact with her children.

Affirmed, in part, and remanded with directions.

WORKMAN, C.J., concurs and files concurring opinion.

STARCHER, J., dissents and files a dissenting opinion.

WORKMAN, Chief Justice, concurring:

While I agree with the majority's ultimate conclusion affirming the final order of the Circuit Court of Marshall County, I write separately to emphasize the importance of the circuit court taking the time to develop a workable plan for a continued relationship between these children and their mother. This case is a hard one, not only because of the geographic distance between the children and their mother made a meaningful improvement period difficult, but also because of the strong emotional bond that still exists between these children and their mother. Because the record clearly demonstrates Appellant's limited ability to care for the special needs of her children and because these children have a permanent foster home placement (with parents willing to make a permanent commitment to them and with whom they have lived for three years), I agree that it is in the children's best interest to affirm the placement. As this Court stated in *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991):

In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare. "[A]ll parental rights in child custody matters," we have stressed, "are subordinate to the interests of the innocent child." *David M. [v. Margaret M.]*, 182 W.Va. [57,] at 60, 385 S.E.2d [912,] at 916 [ (1989) ].

*Id.* at 629, 408 S.E.2d at 381. Nevertheless, it also is important in appropriate cases to develop a meaningful plan for children to have a continued relationship with their parents. *See generally* Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).[1] The majority recognizes such a situation exists in this case and, therefore, remanded this case for the circuit court to develop and execute a plan of supervised visitation.

In developing this plan, the circuit court must take care in assuring that the plan is realistic and workable. This evaluation shall include even the most basic of issues that must be resolved in order for the children to have visitations with Appellant. For instance, by way of analogy, in footnote fifteen of *In re Carlita B.*, this Court mentioned with respect to improvement periods that the circuit court must be apprised of any foreseeable "obstacles to compliance with the plan of improvement, and the court should make any directives necessary to obliterate such obstacles." 185 W.Va. at 625 n. 15, 408 S.E.2d at 377 n. 15. For example, we said "[i]f the parent indicates he is unable to attend a specified program due to lack of transportation or conflict with hours of employment, the circuit court can direct the D.H.S. to assist with transportation or arrange a program which does not conflict with the parent's work schedule." *Id.* Likewise, in the instant case, to meet the best interest of

1. Syllabus point 5 of *In re Christina L.* provides:
   When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.
   *Id.*

these children, the circuit court may find it necessary to involve itself in the most minute of details, such as specifically directing the Department to provide bus (or other) transportation for Appellant in order to get her to and from her visits, or arranging and paying for lodging if Appellant cannot afford it. Although these details seem tedious and mundane, unless the time is taken to examine considerations like these, the visitation plan will be useless and, inevitably, the children will not have the benefit of a continued relationship with someone they love.

These permanent foster care parents also will have challenges before them. Broken human relationships (and in this case, a long-distance continued relationship with the mother) can be inconvenient and at times discouraging for these foster parents. The Department should also work to assist them in the transition to this new arrangement. If needed, the children, the foster parents, and the biological mother should be provided with family counseling. In other words, the lower court on remand will be called upon to do both legal and social work to help make this work for the children. However, if the judge is successful, the work he does here will be more meaningful and significant than any multi-million dollar civil litigation he might preside over.

STARCHER, Justice, dissenting:

I understand the position taken by the majority in this case, but I believe we should require the circuit court to allow the improvement period to continue. I am concerned that we not too hastily sever the bonds between children and parents who, because of limited abilities, are less than ideal parents.

The majority opinion does not note that all of the parties to this case, including the guardian ad litem, asked this court on April 22, 1997 to postpone the hearing of this appeal, because they were still trying to reach an agreed settlement. (They had already requested and received one continuance, in January, 1997, for the same purpose.)

The parties' second request for a continuance included the following statements:

Although the children continue to reside in a specialized foster care home in Kanawha County, significant effort is being made by the Department to locate an appropriate foster home much closer to their mother. Currently a home study is being completed regarding a potential foster home in Wellsburg, West Virginia.

Counsel for the parties met with members of the Multi–Disciplinary Team (MDT) on March 7, 1997, and participated in discussions with Ms. W[.], her family, and representatives from the service agencies which assist both she and her children. Counsel for the Department attended the children's Individualized Treatment Team (ITT) meeting on April 11, 1997, and all counsel have been invited to an MDT meeting to be held on May 2, 1997.

According to counsel for Evelyn Richards W[.], the respondent mother does not want to proceed with the oral arguments. Although Ms. W[.] clearly wants her children to be placed in a nearby foster home, she also appears to understand the careful attention which must be given to the placement. To the best of this writer's knowledge, visitation with the children in the Moundsville area is scheduled for the weekend of April 25, 1997 or May 2, 1997. Additionally, it is possible that the foster parents may transport the children and remain in the Moundsville area during the visitation. This was discussed at the ITT meeting as a means to reduce the amount of disruption to the children's lives. There is some evidence that Dana R[.] (seven years old) exhibits regressive behaviors when her routine and expectations are altered.

A new family case plan is being developed through the MDT process. During the meeting on March 7, 1997, ... Ms. W[.]'s therapist, noted the respondent mother's increased understanding and responsibility. The children's therapist ... commented that during a recent visit with her children, Ms. W[.] had attempted to explain to them the court system and its role in their lives. Both Ms. W[.] and her husband, Harold "Frank" W[.] agreed to cooperate in all efforts which address the

best interests of the children. Additionally, Ms. W[.] is being encouraged to continue her increased commitment to programs of community integration, socialization, and individual therapy.

This Court denied the request for a second continuance—feeling, I believe, that we needed to hear exactly what was happening, and first-hand.

In its brief before this Court, the DHHR acknowledged that it was fair to say that equity favored allowing the improvement period to continue. I can't improve on the eloquence and sincerity of the statements made to this Court by the agency that has the most intimate knowledge of the situation:

As noted in the statement of facts, counsel for the parties hereto attempted to resolve this matter. At the time it appeared as if the circuit court's statements regarding the Department's "winning" and its clear frustration with the inability of the foster care system to accommodate Billy and Dana would result in a favorable decision for the Petitioner. The undersigned believed such a favorable decision would order the Department to find a more local specialized foster care home and develop a "pragmatic" family case plan. Although the oral argument on May 6, 1997, cast a different light upon the appeal and its outcome, the Department believes it would be ingenuous to ignore the expectations and efforts of Evelyn and her family.

My colleagues in this matter would no doubt agree that we learned more about the complexities and inadequacies of the system of care for special children than we perhaps wanted to know. The "specialness" of Billy and Dana and their need for appropriate nurturing, understanding, and patience was the primary and guiding factor. Evelyn also has very special needs and, sadly, she may not be blessed with the capacity to meet her children's needs.

Perhaps the guardian ad litem is correct in his analysis that "a reluctance to visit such a fate upon a woman who will never understand why it happened resulted in the granting of more opportunities for improvement than were warranted by the evidence." (Guardian's brief, p. 19). We are justifiably outraged and punitive when abuse and neglect is visited upon children out of malice or angry illness; however, the response is not so definitive when the parent suffers from mental retardation and "neurotic dysfunction." Children must be assured safety in either situation, but an intellectual capacity which will not allow for that protection does not always signify a lack of love. It is prudent as well as humane to exercise greater caution when the respondent parents are mentally challenged, if only because of the realization that only a matter of "grace" separates any of us from Evelyn, Billy, or Dana.

There have been months of intensive effort directed toward the location of an appropriate placement for Billy and Dana in a foster home closer to their mother. Evelyn and her husband, Frank, as well as the children's maternal grandmother, have fully cooperated with any suggestions made by the MDT members. [T]he Department's caseworker, has invested innumerable hours in the quest for a home and in the formulation of the framework of a family case plan. The Department is steadfast in its belief that all children must be safe and protected from inadvertent as well as intentional harm, but the obvious complexities of this case are further complicated by the reality of Evelyn's love for her children. Hence, the greater willingness to allow her an opportunity for improvement.

Furthermore, there is an acute awareness that if Evelyn had lived in Kanawha County instead of Marshall County, her children would most likely have been placed close by and her compliance with a plan of improvement much more easily evaluated. The Department recognizes the Court's frustration with the length of time these children have been in care, but the Court is no more frustrated than the Department with the dearth of foster homes for children with special needs in Marshall and the surrounding counties. The circuit court noted its ascent from "denial" regarding the availability of a local home.... And although it is easy to

attribute this lack to some insufficiency on the Department's part, the problem is systemic. Consequently, the issue becomes one of fairness—the respondent's mother's essential argument.

It is out of this sense of fairness that the Department remains committed to finding a more local placement for Billy or Dana. Not only for Evelyn and the meaningfulness of an improvement period, but because the record is not consistent regarding the effects upon the children of separation from her. Dr. H[.] reported "significant bonding if not the best of bonding," and he testified that the children should have continued contact with their mother because of the amount of bonding which exists between them....

No one is more aware than the Department of the length of time Billy and Dana have been in their current placement. However, the record is clear that the Department has, from the beginning, attempted to comply with the orders of the circuit court. Intimate contact with this case reinforces the knowledge that assessing blame is futile and misplaced. It is imperative that children in the Department's custody be assured safety and nurturing care; therefore, not everyone can or should be a foster parent. And to successfully parent a special needs child the foster parents must be willing to undergo training and education as well as facilitate the necessary medical or mental health care and attention.

Because Billy and Dana have been out of their mother's care for over three years and out of her geographic locale for much of that time, it is difficult to know exactly what the best interests of the children are. Similarly, although the professionals seem to agree that Evelyn cannot parent independently, that too is an unknown. During the pendency of this appeal the Department has had indications that Evelyn is not wholly dissatisfied with the placement of Billy and Dana into foster care. This is understandable in light of her limitations and may reflect Evelyn's recognition of those limitations. However, Evelyn and her family consistently express a desire to see Billy and Dana and have gone to extraordinary lengths to do so.

This Court in its holdings and in its comments from the bench has recognized that if in the best interests of the children, visitation with the natural parents may continue even after the termination of parental rights. *In re Christina L.,* [194 W.Va. 446] 460 S.E.2d 692 (W.Va.1995). However, just as my colleagues and I learned much about the placement of special children, the undersigned was enlightened as to the sheer logistics of visitation between parents and children at distant points. Clearly, this Court is committed to maintaining visitation when there is significant bonding; however, it is imperative to recognize the realities of visitation—transportation, expense, time, and a setting within which to visit.

There is ample legal and factual evidence of record to support an affirmation of the circuit court's order of June 25, 1996. There are also equitable and good faith reasons to restore Evelyn R.'s improvement period, or in the alternative, provide for meaningful visitation by the placement of Billy and Dana is a more local but abundantly appropriate foster home.

Because I agree with this reading of the fairness issue, I would restore the improvement period.