505 S.E.2d 697

**STATE of West Virginia ex rel.,
EVELYN W., Petitioner,**

v.

**Honorable John T. MADDEN, Judge of the
Circuit Court of Marshall County, and
the West Virginia Department of Health
and Human Resources, Respondents.**

No. 24984.

Supreme Court of Appeals of
West Virginia.

Submitted April 28, 1998.

Decided July 6, 1998.

Kurt W. Hall, Public Defender Corporation, Moundsville, for Petitioner.

Scott F. Reynolds, Robert W. Kagler, Prosecuting Attorney, Moundsville, for State of West Virginia.

Honorable John T. Madden, Moundsville, Pro Se.

John Artimez, Jr., Artimez & Gellner, Moundsville, Guardian Ad Litem.

Anne Cappelletti, Department of Health and Human Resources, Moundsville, for Respondent, West Virginia Department of Health and Human Resources.

Darrell V. McGraw, Jr., Attorney General, Teresa L. Brown, Assistant Attorney General, Charleston, for West Virginia Department of Health and Human Resources.

PER CURIAM: [1]

The relator in this original proceeding in prohibition, Evelyn W., claims that the Circuit Court of Marshall County has failed to comply with the mandate of this Court in *In re William John R.*, 200 W.Va. 627, 490 S.E.2d 714 (1997). In that case, this Court ruled that the relator was entitled to visit two of her natural children, William John R. and Dana R. The Court also directed the

circuit court to require the West Virginia Department of Health and Human Resources to develop a visitation plan. The relator claims that the circuit court, in violation of the spirit of this Court's mandate, has not only failed to arrange the mandated visitation, but has taken steps to terminate her right of visitation. The relator prays that this Court prohibit the circuit court from terminating her right of visitation and that this Court require the circuit court to arrange the visitation mandated in the previous decision.

## I.

### FACTUAL BACKGROUND

As indicated in *In re William John R., id.*, on February 17, 1994, the Circuit Court of Marshall County awarded the West Virginia Department of Health and Human Resources temporary custody of two of the relator's natural children, William John R. and Dana R., after a petition was filed and after evidence was introduced showing that they had been abused and neglected. The circuit court, however, also granted the relator an improvement period and arranged for supervised visitation between the relator and the children.

Some two years later, after extensive efforts had been expended to correct the situation which had given rise to the charges of neglect and abuse, the circuit court concluded that there was no reasonable likelihood that the children could be reunited with the relator. *See In re William John R., id.* The circuit court, therefore, granted the West Virginia Department of Health and Human Resources permanent guardianship of the children. The relator appealed this decision to this Court, and this Court, in *In re William John R., id.*, concluded that the circuit court had properly granted permanent guardianship of the children to the West Virginia Department of Health and Human Resources. The Court, however, also ruled that it was appropriate for the relator to

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

engage in supervised visitation with the children. The Court specifically stated:

> Upon remand, the circuit court shall consider and establish a time, no later than which the Department shall submit the visitation plan for the circuit court's review, in order for the appellant to soon have appropriate contact with her children.

*In re William John R., id.* at 634, 490 S.E.2d at 721.

After this Court rendered the decision in *In re William John R., id.,* a case coordinator for the West Virginia Department of Health and Human Resources filed a report dated August 25, 1997, with the circuit court which indicated that Dana R. was exhibiting regressive behavior. In another report filed on September 4, 1997, the case coordinator again reported that Dana R.'s behavior had regressed and that her foster parents had expressed doubt as to their ability to keep her in their care. After receiving this information, the circuit court ordered that the children be evaluated by Braley and Thompson's Specialized Foster Care Services. The circuit court, pursuant to this Court's mandate, also ordered that the West Virginia Department of Health and Human Resources promptly formulate a firm plan for visitation between the relator and the children.

In the ensuing period, the West Virginia Department of Health and Human Resources sought an evaluation of the children from the Kanawha Multi–Disciplinary Team, and the case was continued by the circuit court so that the findings of this group could be obtained.

Further, as a part of the continuing evaluation of the case, Dr. Gretchen D. Lovett, a pediatric psychologist, examined Dana R. and reported that Dana R. had recently killed two cats by breaking one's neck and drowning the other. She had also attempted to "poke out" animals' eyes, and she had pretended that her Barbie dolls were having sex. Dr. Lovett recommended that Dana R. undergo intensive psychotherapy and other treatment.

On January 5, 1998, the Multi–Disciplinary Team, after evaluating Dana R., concluded that:

> This is a very sad situation. Here is a mother who does not want to lose contact with her children but cannot care for them or help them in their adjustment to foster care. The daughter's feelings about her natural mother are confused, she wants to see her, feels responsible for her, and at the same time these visits are emotionally damaging. Dana gets very mixed messages by having these periodic visits which imply to her that there is still a chance she will be able to go live with her mother, while the fact is this cannot happen. Natural mother fosters this by verbalizing to Dana that she wants her back. Each time she visits she regresses and it takes a great deal of effort to help her through this trauma and back to where she was before the visit.
>
> The Team believes that in order for Dana to have any real progress and treatment and to mature and develop emotional strength to cope with her situation that the visitation must cease. This is very damaging to Dana, to her mother, who also then has false hopes, and to the foster family who bear the brunt of all this acting out.

The Multi–Disciplinary Team reached the following conclusion:

> By the conclusion of the meeting, the entire team, with one exception, had agreed that it would be in the children's best interest at this point to stop the maternal visitation. Some expected that, at some future time when Dana would show a need and ability to handle visitation without serious regressions, perhaps they could be reinstated, but that the cues should come from the child.

After receiving these reports, the circuit court, on January 8, 1998, entered an order suspending visitation between the relator and the children.

As previously stated, the relator in the present proceeding asserts that the circuit court, by denying her visitation with the children, is violating the mandate of this Court in *In re William John R., id.* She, as a consequence, prays that this Court prohibit the circuit court from further temporarily preventing the visitation and from permanently terminating such visitation. The rela-

tor also prays that this Court direct the circuit court to order the Department of Health and Human Resources to submit a plan of supervised visitation. In the alternative, she prays that this Court devise its own plan of visitation and order the circuit court to implement it.

## II.

### THE RIGHT TO PROHIBITION

 Recently, in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court set forth factors which should be considered in determining whether relief by way of prohibition should be granted to a party seeking such relief. The Court said:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III.

### DISCUSSION

 In *In re William John R., supra.*, this Court observed that, where parental rights are not terminated, visitation should be considered in line with the principles set forth in *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). It is apparent that the Court also believed that lack of visitation was due to the absence of a family case plan, a defect in the handling of the case.

From the supplemental documentation filed with the Court in the present proceeding, it now appears that the current delay in arranging visitation is not due to the absence of a family case plan, or a defect in the handling of the case, but that it is due to the fact that the circuit court has received a report that visitation has an emotionally damaging effect upon Dana R. There is also evidence that Dana R.'s psychological problems, as evidenced by her behavior, are severe.

 In Syllabus Point 3 of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), this Court stated: "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."

While the circuit court is technically in violation of this Court's mandate, it is apparent that, based on new information and evidence not available when this Court's prior decision was rendered, the circuit court's motivation is to promote the health and welfare of Dana R., the concern which under this Court's ruling in *In re Katie S., supra*, must be the paramount concern in any child abuse and neglect case.

Under the peculiar circumstances of this case, where our earlier mandate was, in substantial part, predicated on procedural deficiencies, and where the circuit court's motivation is to promote the paramount goal of the law as recognized and endorsed by this Court, this Court does not believe that the circuit court has engaged in a sufficiently egregious act in delaying the implementation of our earlier mandate to justify the issuance of a writ of prohibition under the principles set forth in *State ex rel. Hoover v. Berger, supra.* Having said this, however, this Court believes that it is absolutely incumbent upon the circuit court to move with all deliberate haste to conduct a hearing on the impact of visitation between the relator and Dana R.

**638**

on Dana R. and to require that a visitation plan be prepared promptly if it is shown that such visitation would be in Dana R.'s best interest and not detrimental to her well being. *See In re Christina L., supra.* The circuit court should, thereafter, enter a full and complete order setting forth its findings of fact and conclusions of law.

The writ of prohibition sought is, therefore, denied.

Writ denied.