STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**May 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **J.K.-1, J.K.-2, K.C.-1, and K.C.-2**

**No. 15-0982** (Raleigh County 15-JA-56-H, 15-JA-57-H, 15-JA-58-H, & 15-JA-59-H)

## MEMORANDUM DECISION

Petitioner Mother S.C., by counsel Russell O. Wooton, appeals the Circuit Court of Raleigh County's September 11, 2015, order terminating her parental rights to nine-year-old J.K.-1, seven-year-old J.K.-2, five-year-old K.C.-1, and two-year-old K.C.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Stanley I. Selden, filed a response on behalf of the children also in support of the circuit court's order. J.K., the father of two of the children, by counsel John F. Parkulo, also filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) denying her a post-adjudicatory improvement period and an opportunity to demonstrate her likelihood to participate in that improvement period; (2) finding that petitioner had not cured, and had no control over, her addiction to controlled substances; and (3) finding that petitioner physically abused her children when the specific conduct alleged in the petition was shown not to have occurred.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because each child shares initials with a sibling, we will refer to the children as J.K.-1, J.K.-2, K.C.-1, and K.C.-2 when referenced herein.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

The instant case is the second abuse and neglect proceeding instituted against petitioner. In the first proceeding, which was initiated in October of 2013, the DHHR alleged that petitioner abused controlled substances and that her abuse resulted in K.C.-2 testing positive at birth for certain controlled substances, including cocaine. That same proceeding also included allegations against D.C., the biological father of K.C.-1 and K.C.-2. D.C.'s parental rights were involuntarily terminated. D.C. was ordered to have no contact with K.C.-1 and K.C.-2. Petitioner, on the other hand, successfully completed her improvement period, and the children were returned to her custody in September of 2014.

Approximately seven months later, the DHHR filed the instant abuse and neglect petition against petitioner. In that petition, the DHHR recited a referral it received on April 6, 2015, which alleged that petitioner had physically abused one of her children (later disclosed to be nine-year-old J.K.-1) on April 2, 2015. According to the referral, petitioner had blamed J.K.-1 for a flat tire on her vehicle. She became angry and "beat [J.K.-1's] head onto [a] baby crib, and kicked [J.K.-1], and stomped on [J.K.-1's] stomach and pulled and hit [J.K.-1's] ear with her fist." The DHHR further alleged in the petition that a Child Protective Services ("CPS") worker investigated the referral by immediately meeting with the child at his school. The CPS worker claimed to have witnessed bruises and other signs of injury to the child's head and arm. As alleged in the petition, J.K.-1 proceeded to tell the CPS worker that he was hiding under his bed when petitioner dragged him out and physically attacked him as described in the referral. The DHHR also alleged that soon after the children were returned to petitioner's custody following the prior abuse and neglect proceeding, petitioner permitted D.C. to reside in her home. Two of petitioner's children stated that they often saw petitioner and D.C. use a credit card to crush cocaine and snort it. At the subsequent preliminary hearing, petitioner stipulated that she permitted D.C. to remain in the home following his involuntary termination of parental rights.

Between June and August of 2015, the circuit court held three adjudicatory hearings on the April of 2015 petition. At those hearings, the circuit court heard evidence that, following the referral made to CPS, a law enforcement officer performed a safety check on petitioner's home on April 7, 2015, and located D.C. in a closet of the home. The officer also found a plate, razor, and what appeared to be drug residue in the same bedroom where D.C. was located. A guidance counselor at J.K.-1's school testified that she witnessed bruising and swelling on J.K.-1's ear and head on April 6, 2015. She further testified that J.K.-1 told her that petitioner caused those injuries because she blamed him for the flat tire on her vehicle. It was also established that the children's forensic interviews supported the allegations of physical abuse and drug use found in the petition.

Testifying on her own behalf, petitioner denied the abuse and claimed to have only grounded J.K.-1 on April 2, 2015, for flattening her tire and for getting into a fight on the school bus. She further testified that J.K.-1 and J.K.-2 went to visit their paternal grandmother for the weekend beginning April 3, 2015. She claimed that the last time she saw J.K.-1 or J.K.-2 was on April 3, 2015, and that J.K.-1 had no injuries on that date. Several witnesses testified in support of petitioner's claim that J.K.-1 exhibited no bruising or swelling on April 3, 2015. The circuit court ultimately found that petitioner abused the children and scheduled a dispositional hearing for September of 2015.

In September of 2015, the circuit court held a dispositional hearing. At that hearing, the circuit court found that petitioner's circumstances did not warrant an improvement period. The circuit court noted that "there is still a drug issue present in the home." By order entered on September 11, 2015, the circuit court terminated petitioner's parental rights to all four children. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner first argues that the circuit court erred in denying her a post-adjudicatory improvement period and an opportunity to demonstrate her likelihood to participate in an improvement period. We have held that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]" Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Pursuant to West Virginia Code § 49-4-610(2)(B), a circuit court may only grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . ." This Court has also held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem unbeatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

In this case, it is clear that the circuit court committed no error in denying petitioner an improvement period. In its April of 2015 petition, the DHHR alleged that petitioner permitted D.C. to remain in her home with the children following his involuntary termination of parental rights; that she physically abused J.K.-1; and that drug use was present in the home. At no time in the underlying proceedings did petitioner acknowledge that she physically abused J.K.-1 or that she permitted drug use in her home. In fact, she continues to deny both in her brief on appeal. Petitioner stipulated only to the allegation that she permitted D.C. to remain in her home. Based on the circumstances presented here, petitioner failed to acknowledge any problems with violence and drug use in her home. We note that petitioner incorrectly concludes that "the basis for [the circuit court's] denial of the improvement period is solely that [she] allow[ed] D.C. to remain in her life." Rather, in addition to that finding, the circuit court also found "accompanying violence and drug use," which were clearly problems at issue in this case. Therefore, because petitioner failed to acknowledge those problems, we find no error in the circuit court's denial of an improvement period in this matter.

Petitioner further argues that she was denied an opportunity to demonstrate her likelihood to participate in an improvement period. At the outset, we note that it is unclear from petitioner's argument what "opportunity" she was allegedly denied. Nowhere in the record before us did the circuit court prevent her from filing motions for pre-adjudicatory, post-adjudicatory, or dispositional improvement periods, pursuant to the statutory framework for such motions. That said, as noted above, circuit courts have the discretion to grant or deny improvement periods based on the circumstances before them. In this case, the evidence of petitioner's physical abuse of J.K.-1 and the drug use in her home, coupled with her denial thereof, support the circuit court's ruling that an improvement period was not warranted. This is particularly true in light of the fact that petitioner had recently completed an improvement period in a prior proceedings only to commit child abuse shortly thereafter.

While petitioner claims that she needed to know the circuit court's findings on abuse before she could demonstrate her ability to correct those issues, petitioner's argument only highlights her failure to acknowledge the existence of a problem that would necessitate improvement. Under this rationale, no circuit court could ever grant a pre-adjudicatory improvement period, which is clearly permissible under West Virginia Code § 49-4-610(1). Regardless, the allegations and evidence in this case provided ample notice of the problems to be corrected. The initial abuse and neglect petition was filed in April of 2015, and petitioner heard evidence of the problems at issue over the course of three months in three separate adjudicatory hearings. Therefore, for those reasons, we find no merit to petitioner's argument that she was denied the opportunity to demonstrate her likelihood to participate in an improvement period.[3]

---

[3]We also note that petitioner relies upon case law that has been rendered inapplicable by changes to the abuse and neglect statues. In her argument, petitioner cites this Court's decision in *State ex rel. West Virginia Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987), for the proposition that "the statute presumes the entitlement of a parent to an

Next, petitioner argues that the circuit court erred in finding that petitioner had not cured, and had no control over, her addiction to controlled substances. In abuse and neglect cases, the circuit court is the entity charged with weighing evidence and making findings of fact. *See In re Emily*, 208 W.Va. at 339, 540 S.E.2d at 556. We review such findings of fact to determine whether they are clearly wrong based on the evidence.

In support of this assignment of error, petitioner relies upon her many negative drug screens in the instant proceeding. However, she admits that there is evidence supporting the finding based on the children's statements that they witnessed petitioner use drugs in the home. In turn, she argues that the children were "making up these stories" when they gave those statements. Based on our review of the record on appeal, we find no support for petitioner's claim that the circuit court erred in relying on the children's statements. Further, the officer's testimony in the adjudicatory phase of the proceedings also supports the circuit court's finding. The officer testified that he witnessed what appeared to be drug paraphernalia and drug residue in petitioner's home in April of 2015. Given the evidence presented below, the circuit court's finding as to petitioner's drug addiction is not clearly wrong. Therefore, we find no merit to petitioner's second assignment of error.

Petitioner's third and final assignment of error is that the circuit court erred and denied her due process of law in finding that she physically abused J.K.-1 because the underlying petition was invalid. Petitioner argues that the circuit court's finding is error because the specific

---

(continued . . .)

(continued . . .)

opportunity to ameliorate the conditions or circumstances upon which a child neglect or abuse proceeding is based pending final adjudication[.]" However, in *State ex. rel Virginia M. v. Virgil Eugene S.*, 197 W.Va. 456, 475 S.E.2d 548 (1996), this Court specified that the most recent statutory enactments clarified that the burden of proof falls upon the parent requesting an improvement period. Under the current statutory framework for improvement periods, entitlement to an improvement period is conditioned upon the parent's ability to demonstrate, "by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . ." In footnote 9 of *Virginia M.*, this Court explained as follows:

> We note that West Virginia Code § 49-6-12 (1996), recently enacted by the West Virginia Legislature, now requires a parent seeking an improvement period in cases of neglect or abuse to file a written motion requesting it, and to demonstrate by clear and convincing evidence that he or she is likely to fully participate in the improvement period. Thus *rather than presuming the entitlement of a parent to an improvement period, as under* Cheryl M., . . . *the law now places on the parent the burden of proof regarding whether an improvement period is appropriate.*

197 W.Va. at 461 n. 9, 475 S.E.2d at 553 n. 9 (emphasis added).

5

conduct in the petition was not shown to have occurred at the alleged time, in violation of West Virginia Code § 49-6-1(a). That statute provides as follows:

> [i]f the department . . . believes that a child is neglected or abused, the department . . . may present a petition setting forth the facts to the circuit court. . . . The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought.[4]

W.Va. Code § 49-6-1(a). In the context of abuse and neglect petitions, we have held that "[i]f the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W.Va. 683, 280 S.E.2d 315 (1981).

Here, petitioner does not argue that the petition failed to "allege specific conduct including time[.]" To the contrary, petitioner cites the petition's reference to time as April 2, 2015. Further, it is undisputed that the petition provided two primary allegations as to the specific physical abuse, which included time and place: (1) J.K.-1 stated that petitioner physically abused him at her home and (2) J.K.-1 stated that the abuse occurred on the Thursday, before he made the accusation, which would have been April 2, 2015. Petitioner claims that the evidence failed to support the timing of the abuse as April 2, 2015, and she cites the testimony of witnesses who claimed that J.K.-1 showed no signs of injury on April 3, 4, and 5. While it is true that several witnesses close to petitioner testified that the child showed no injuries on those days, petitioner disregards as evidence J.K.-1's statement as to the timing of his injuries.

Regardless, this argument fails notwithstanding J.K.-1's statement as to timing. It is clear that the petition satisfied the statutory obligation to provide sufficient *allegations* of time and place. It is also clear that the petition was sufficiently specific to inform petitioner of the *basis* upon which it was brought. As such, we find no merit to petitioner's argument that the petition was either invalid or could not form the basis of the finding of physical abuse as proven by the evidence presented.

For the foregoing reasons, we find no error in the circuit court's September 11, 2015, order, and we hereby affirm the same.

Affirmed.

---

[4]In her brief to this Court, petitioner cites the newly enacted version of this statute, West Virginia Code § 49-4-601, which was made effective in May of 2015. As the petition in this case was filed in April of 2015, we apply that version of this statute in effect at that time, West Virginia Code § 49-6-1(a). That said, we note that there is no substantive difference in the two versions.

6

**ISSUED**: **May 23, 2016**


**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II