**FILED**

**October 1, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.C.**

**No. 21-0189** (Logan County 19-JA-68)

## MEMORANDUM DECISION

Petitioner Father P.C., by counsel Mark Hobbs, appeals the Circuit Court of Logan County's January 22, 2021, order terminating his parental rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, J. Christopher White, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motions for an improvement period, violating the requirements of the American with Disabilities Act, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the instant petition, the parents were the subject of at least ten Child Protective Services ("CPS") investigations pertaining to domestic violence and physical abuse.[2] In 2000, the DHHR found maltreatment "for shaking a child and failure to protect." In addition, petitioner was charged with two counts of domestic battery and two counts of domestic assault based on

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Some of the DHHR's prior investigations involve J.C.'s older siblings who are not at issue in this appeal.

the findings of that investigation. The mother admitted to the domestic violence in the home, then recanted during the investigation process. In 2007, the DHHR investigated the parents' home based on allegations of a child "being choked" and physical markings observed on the child's neck, but the parents denied involvement. In 2009, the children "disclosed fear of [petitioner]" and disclosed that they witnessed him hold a gun to the mother's head, "pull the trigger three separate times and on the fourth time of pulling the trigger . . . aimed the gun towards the hillside . . . and the gun fired." Finally, in 2018, the DHHR investigated allegations of physical and emotional abuse in the home, but, again, the parents denied that they mistreated the children. Throughout these proceedings, the DHHR alleged that petitioner was noncompliant during several open CPS cases for the family.

In May of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner and the mother exposed J.C. to domestic violence in the home. The DHHR alleged that the investigation began due to J.C.'s excessive absence from school. During an interview with a CPS worker, then-seven-year-old J.C. disclosed that he wanted to stay home so that he could protect the mother from petitioner. He disclosed that petitioner "put a belt around [the mother's] neck" and held a knife to her throat. He stated that the mother told him about the incident and showed him a picture. He also disclosed seeing petitioner hit the mother "real hard." According to the DHHR, J.C. became emotional during the interview and asked the CPS worker not to speak to his parents because the mother told him not to tell anyone about the abuse or else she would "be dead and [J.C.] won't see [her] no more." J.C. stated that petitioner had described to the child how "[h]e will kill us. He will put us in a car and make it look like a car accident and then, well, we will be gone."

CPS workers contacted the parents, who both denied the allegations. However, once alone, the mother admitted to a CPS worker that the allegations were true. She admitted that petitioner had always been violent; he had held guns to her head, held knives to her body, threatened to kill her, and hit her. According to the DHHR, the mother reported that she was afraid to remain in the home and afraid of what might happen. The DHHR obtained photographs of bruising on the mother's neck and arm that she indicated were the result of petitioner's violent actions. J.C. later participated in a forensic interview, during which he provided statements consistent with the allegations in the petition. Petitioner waived his right to a preliminary hearing, and the circuit court ordered both parents to participate in a parental fitness evaluation.

The circuit court held an adjudicatory hearing in September of 2019. The mother filed an answer to the petition, admitting that she had been the victim of "chronic domestic violence." The DHHR reported that petitioner attended his parental fitness evaluation, but he had been "inappropriate with staff" and left before the evaluation was completed. The circuit court ordered that the adjudicatory hearing would be continued to give petitioner an opportunity to complete his evaluation.

In October of 2019, the circuit court learned that petitioner was involved in an automobile accident that left him paralyzed and one other person dead. The DHHR filed an amended petition alleging that petitioner had been charged with driving under the influence resulting in death and driving under the influence resulting in bodily injury, both felonies.

2

The circuit court held two adjudicatory hearings in January of 2020 and July of 2020. At the January hearing, petitioner denied the allegations contained in the petition and denied that he had any substance abuse or alcohol abuse issues. Petitioner also moved for an improvement period. The circuit court found it necessary to continue the adjudicatory hearing and held petitioner's motion for an improvement period in abeyance. At the July hearing, petitioner admitted that he had a substance abuse and alcohol issue in the past and asserted it was no longer an issue. He also testified that he would comply with the conditions of an improvement period if one were granted.

However, on cross-examination, petitioner again denied J.C.'s allegations and denied any domestic abuse in the home, other than arguing and shoving the mother on occasion. Petitioner asserted that J.C. had lied about the allegations, that he had been "brainwashed" by the CPS workers and by video games, and that the DHHR was attempting to ruin his marriage. Finally, petitioner admitted that he was subject to the conditions of bond due to his criminal charges and violated those conditions by testing positive for alcohol. The DHHR called petitioner's parental fitness evaluator, who was qualified as an expert in forensic psychology. She explained that petitioner presented for an evaluation in August of 2019, but he was "very rude and very difficult" during the assessments. Petitioner did not complete the assessments, although the DHHR scheduled an opportunity for him to finish them. Despite petitioner failing to complete the evaluation, the evaluator was able to form an opinion regarding his ability for parental improvement. She explained that due to petitioner's denial of the issues of abuse and neglect, specifically the extreme domestic violence against the mother, and his lack of motivation to change, her opinion was that petitioner's capacity for parental improvement was "virtually nonexistent." She further explained that this prognosis was reserved for cases where "the children are at some kind of extreme risk[,] whether it[ is] physical abuse or sexual abuse." She clarified that this is "the absolute worst prognosis" that her office issued.

Based on petitioner's testimony and J.C.'s forensic interview, the circuit court found that J.C. described multiple instances of extreme domestic violence, including petitioner threatening the mother and child with a firearm and the incident where petitioner tied a belt around the mother's neck and threatened her with a knife. The circuit court also noted that the mother admitted to the allegations in the petition and supported J.C.'s statements. The court found that, despite petitioner's admissions to substance and alcohol abuse, he failed to address the allegations of domestic violence, other than admitting minimal involvement. The circuit court concluded that J.C. was an abused and neglected child and adjudicated petitioner as an abusing parent. It further denied petitioner's motion for an improvement period.

The circuit court held the final dispositional hearing in December of 2020. The petitioner moved for a post-dispositional improvement period but presented no evidence in support. The circuit court again denied his motion for an improvement period.

The circuit court then heard evidence regarding the DHHR's motion to terminate the parents' parental rights. The DHHR presented testimony from the mother's psychological evaluator and a DHHR worker. Ultimately, the circuit court found that "[t]here [was] no evidence . . . [that petitioner had] meaningfully addressed the issues which led to the filing of the petition and amended petition or that [he had] any intention of even attempting to do so."

3

Further, the court found that there were no additional services that the DHHR could provide petitioner to further the goal of reunification. It concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the child. Accordingly, the circuit court granted the DHHR's motion to terminate petitioner's parental rights by its January 22, 2021, order. He now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying his motions for an improvement period. He "believes that his handicap is one of the reasons that he never received an [i]mprovement [p]eriod of any kind." Petitioner asserts that the circuit court was bound to grant him an improvement period, "unless [it found] compelling circumstances to justify a denial" of the motion. *See* Syl. Pt. 2, *State ex rel. Virginia M. v. Virgil Eugene S. II*, 197 W. Va. 456, 475 S.E.2d 548 (1996).

Initially, we note that petitioner's reliance on the "compelling circumstances" standard for denying an improvement period is misplaced. This standard was "based upon language in a former version of [West Virginia Code § 49-4-610], prior to the 1996 amendments, which stated that a court was to provide an improvement period unless compelling circumstances indicated otherwise." *In re Charity H.*, 215 W. Va. 208, 216 n.11, 599 S.E.2d 631, 639 n.11 (2004). However, "[w]ith the deletion of such language from the statute, the compelling circumstance concept is no longer relevant to this Court's investigation." *Id*. The current statute requires that the parent "demonstrate[], by clear and convincing evidence, that [he or she is] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(A). It is well established that

---

[3]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in his current placement.

"West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Critically, we have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, petitioner failed to acknowledge the extreme domestic violence in the home, and he does not even address the gravity of this failure on appeal. The circuit court referenced J.C.'s forensic interview where he described the extreme domestic violence in the home, which included petitioner threatening the mother and J.C. with a firearm and the incident where petitioner tied a belt around the mother's neck and threatened her with a knife. Furthermore, J.C.'s statements were supported by the mother's admissions to the petition. The circuit court found that J.C. was an abused child based upon this evidence, and petitioner did not accept any responsibility for these acts. Accordingly, it is clear to this Court that the circuit court did not err in denying either of petitioner's motions for improvement periods as an improvement period would have been an exercise in futility and not in the best interest of the child.

Next, we find that the circuit court did not violate the Americans with Disabilities Act ("ADA") in denying petitioner's motions for an improvement period. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Petitioner argues that he "was simply denied the consideration of decency" and that he found it "odd that the [DHHR] was aware of his alcohol problem and his paralysis but did nothing to help."[4] Again, petitioner

---

[4]In addition to his paralysis, petitioner argues that his diagnosis of "unspecified personality disordered with antisocial features," made by the DHHR's forensic psychologist during the proceedings, is a "mental disorder" that would provide him protection under the Americans with Disabilities Act ("ADA"). 42 U.S.C. §§ 12101 – 12213. However, petitioner fails to explain how this alleged mental impairment "substantially limits one or more major life activities." Moreover, petitioner fails to cite to the record where this argument was raised before the circuit court. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va.

(continued . . . )

ignores the fact that he denied the circuit court's finding that J.C. was an abused child based upon the extreme domestic violence in the home. Petitioner cites to nothing in the record that shows he was denied an improvement period "by reason of [his] disability." Petitioner's plea on appeal to "give him a chance to redeem himself" avails no one when he had not acknowledged the extreme domestic violence in the home which, by this Court's prior holdings, rendered treatment of that problem impossible. Upon our review, petitioner was treated in the same manner as all parents who fail to acknowledge the conditions of abuse and neglect. Accordingly, we find no merit to petitioner's argument.

Finally, we conclude in finding that the circuit court did not err in terminating petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination is necessary for the child's welfare. *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that termination of parental rights, "the most drastic remedy" in abuse and neglect cases, may be employed "when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected"). Pursuant to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." In this case, the court's findings are fully supported by petitioner's failure to acknowledge the conditions of abuse and neglect as he was unable to solve these problems without acknowledging them. Accordingly, the circuit court did not err in terminating petitioner's parental rights as there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 1, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we will not consider this argument on appeal.