**FILED**
**November 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **I.D. and E.D.**

**No. 20-0962** (Cabell County 19-JA-54 (I.D.), 20-JA-76 (E.D.))

## MEMORANDUM DECISION

Petitioner Mother C.D.[1] appeals the Circuit Court of Cabell County's two orders entered on November 6, 2020, terminating her parental rights to her children I.D. and E.D., respectively.[2] The West Virginia Department of Health and Human Resources ("DHHR") and the children's guardian ad litem ("GAL") filed briefs in support of the circuit court's order.[3] Counsel presented oral argument on November 1, 2021.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court reaches separate conclusions with respect to each child. With regard to I.D., we find that there is evidence in the record supporting the termination of the petitioner's parental rights, and no prejudicial error warranting reversal. Accordingly, we affirm the circuit court's decision to terminate the mother's parental rights to I.D. However, we remand I.D.'s case solely for the purpose of allowing the circuit court to enter a corrected dispositional order that expressly includes the language required to terminate parental rights. As to E.D., we find that the circuit court erroneously terminated the petitioner's parental rights without first adjudicating E.D. as an abused or neglected child and the petitioner as an abusive or neglectful parent with regard to E.D. Therefore, we vacate the dispositional order in E.D.'s case and remand for further proceedings consistent with this decision. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum decision.

---

[1] Because the case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n. 1 (1990).

[2] The circuit court entered two, mirror-image orders on November 6, 2020; one order terminated the petitioner's parental rights to I.D., while the other order terminated her parental rights to E.D.

[3] The petitioner mother is represented by Michael S. Bailey, Esquire. The DHHR is represented by Patrick Morrisey, Attorney General; S. L. Evans, Assistant Attorney General; and Mindy M. Parsley, Assistant Attorney General. The current GAL is Ryan Turner, Esquire.

# I. Facts and Procedural History

The evidence developed in the circuit court reveals a history of substance abuse by the petitioner mother. In 2016, when I.D. was two-years old, the DHHR initiated abuse and neglect proceedings based upon the petitioner's drug use. I.D. was removed from the home.[4] At the end of 2016, the petitioner was able to sufficiently remedy her conduct and I.D. was returned to her custody. However, in 2019 the DHHR received information indicating that the petitioner appeared to be on drugs, had lost a significant amount of weight, had dark circles under her eyes, and looked "really bad." The referral indicated that the petitioner locked the then-five-year-old I.D. alone in a room when the petitioner felt like she was losing control and was concerned that she might harm or kill the child, or when she simply wanted to go to a store. During its investigation, the DHHR learned that the petitioner had called 9-1-1 believing she was dying from a drug overdose. A law enforcement officer interviewed the petitioner, who admitted using marijuana, methamphetamine, and Percocet. The petitioner said she had been using drugs for the past two months and I.D. had been in her care while she was under the influence. The child was again removed from the petitioner's custody and placed in foster care. The DHHR filed an abuse and neglect petition alleging that the mother's substance abuse negatively affected her ability to parent I.D. The circuit court ratified the emergency removal.

In May 2019, the circuit court held an adjudicatory hearing where the petitioner stipulated to abuse and neglect based upon her drug use. However, when questioned about whether she had a problem with drugs, she answered no. Despite this denial, the circuit court accepted her stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. The multidisciplinary treatment team ("MDT") discussed the petitioner's situation and determined that she needed to, inter alia, undergo a parental fitness examination, receive parenting and life skills services, secure employment, obtain substance abuse treatment, and submit to drug testing. According to the petitioner, these terms were never set forth in a written child and family case plan filed with the court.

A psychological parental fitness exam was performed and provided to counsel and the court in August 2019. The examiners concluded that the prognosis for the petitioner to attain "minimally adequate parenting within the typical timeframe of this type of case is currently assessed to be poor largely due to chronic substance abuse and dependence and apparent minimization of the same, neglect of [I.D.'s] basic needs, poor judgment, history of verbal abuse, and failure to acknowledge some referral concerns." At a review hearing in September 2019, counsel for the DHHR advised the circuit court that the petitioner was doing well in her improvement period and had recently announced that she was pregnant.

However, at a review hearing on January 13, 2020, the DHHR and the GAL reported that the petitioner had not been complying with the terms of her improvement period, had not submitted to a drug screen since December 12, 2019, had lost her job, and had admitted smoking marijuana while pregnant. The petitioner's counsel asked that the improvement period be continued, stating that he had explained to the petitioner the importance of following "her case plan." The court agreed to extend the improvement period for one month.

---

[4] E.D. had not yet been born.

A hand-written "MDT Summary" reflects that the MDT met on January 22, 2020, to discuss the petitioner's on-going case plan and improvement period. This summary included a list of the things the petitioner was required to do: submit to weekly drug screens at the day report center or with her rehabilitation provider; continue with parenting and adult life skills training; maintain housing; seek employment; obtain drug treatment at Project Hope/MOMS program; and have two clean drug screens before supervised visits with I.D. are permitted. Persons present at the MDT meeting—including the petitioner herself—signed off on this list.[5]

According to a "Court Summary" prepared by the DHHR, the petitioner had a clean drug screen the week of January 22, 2020; did not screen the following week despite the requirement to do so; tested positive for amphetamines and methamphetamines on February 6, 2020; and tested positive for amphetamines, methamphetamines, and benzodiazepines on February 12, 2020. Moreover, the petitioner failed to enter a treatment program. On February 12, 2020, the petitioner's service provider took her to complete an intake assessment at a program called PROACT. The petitioner was supposed to return the next day to complete the intake process, but she failed to do so.

A review hearing was held on February 24, 2020, where the court was informed of the petitioner's failure to comply with the terms of her improvement period. The petitioner had not had visitation with I.D. since November or December because she had not produced two clean drug screens in a row. According to her lawyer, the petitioner claimed that her drug tests had returned false positive results.

The petitioner gave birth to E.D. in May 2020. Although no drugs were found in the cord blood, E.D. was hospitalized for approximately one month because he was experiencing severe symptoms of neonatal abstinence syndrome. The DHHR filed a new petition for abuse and neglect with a request for immediate custody of E.D. The court ratified the DHHR's request to take emergency custody of E.D., and E.D. was placed in foster care.

At a hearing in June 2020, the petitioner waived her right to a preliminary hearing on the new petition. It was agreed that a hearing would be held on August 24, 2020, for adjudication with respect to E.D. and disposition with respect to I.D. The court also directed that genetic testing be performed to confirm paternity of E.D.'s putative father.[6]

Meanwhile, on May 21, 2020, the petitioner entered in-patient treatment at the Huntington Addiction Wellness Center. She was involuntarily discharged from this program on August 6, 2020, after she was involved in an altercation with another program participant. The appellate record contains the following letter from a program case manager regarding the petitioner's stay at the treatment center:

---

[5] There may be written summaries like this for all of the MDT meetings, but this summary happens to be included in the appellate appendix record.

[6] I.D.'s father died before the current proceedings began. E.D.'s father was brought into this case as a respondent, but his rights are not at issue in this appeal.

During [the petitioner's] stay at our facility she showed little progress and had a lack of willingness to participate in group sessions and individual sessions with peer support. Her attitude towards other clients as well as staff was disrespectful on numerous occasions and often resulted in her cussing and yelling. She would have outbursts and storm out of group sessions when addressed about her attitude or held accountable for her actions. No matter how many times our team tried to redirect her in a positive direction, she would receive the redirection as us singling her out. We tried every attempt to help [the petitioner] however there is nothing our facility can do for a client who is unwilling to create a change in their life for the better.

The petitioner has not submitted to drug testing since her discharge from the rehabilitation program on August 6, 2020.

The circuit court held an evidentiary dispositional hearing that began on August 24, 2020, and concluded on September 17, 2020.[7] A DHHR employee testified to the petitioner's failure to comply with the terms of her improvement period including testing positive for drugs multiple times; failing to submit to all required drug screens; inconsistent participation in, and the failure to complete, parenting and adult life skills classes; not having a job since October 2019; and failing to complete drug rehabilitation. In her testimony, the petitioner denied that she was still having a problem with drugs and claimed that the positive drug test results were false positives. She testified that she knew she was required to *enter* into a rehabilitation program, but did not understand that she was required to *complete* a rehabilitation program. The petitioner testified that when she entered the Huntington Addiction Wellness Center, she did not feel she had a problem with any illegal substances. However, she also testified that she had been taking Suboxone since July 2019, although this is not reflected elsewhere in the record or in her drug test results. The circuit court found "incredible" the petitioner's claims that all of her positive drug test results were false and that she did not understand the need to complete rehabilitation. The court expressly concluded that the DHHR had "carried the burden of proof required in these cases . . . [a]nd it's in the best interest of both of these children that [the petitioner's parental] rights be terminated."[8]

Two final disposition orders were entered on November 6, 2020. These mirror-image orders made the same findings of fact and conclusions of law, with one order terminating the petitioner's parental rights to I.D. and the other order terminating her parental rights to E.D. In the orders, the court found that the DHHR had made all reasonable efforts to reunify the family. However, neither of these orders included specific language from the disposition statute setting forth the findings required for termination of parental rights. Specifically, the orders failed to state

---

[7] As discussed below, this hearing proceeded as a dispositional hearing to determine the petitioner's rights to both children even though there had not been an adjudication with regard to E.D.

[8] Ongoing proceedings against E.D.'s father were continued to a later date and are not pertinent to this appeal.

4

that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is "necessary for the welfare of the child[.]"[9] The petitioner appeals these orders to this Court.

## II. Standard of Review

When reviewing a circuit court's order terminating parental rights, we give plenary review to questions of law while findings of fact and conclusions of law regarding whether a child was abused or neglected are examined for clear error:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this in mind, we consider the parties' arguments.

## III. Discussion

The petitioner raises multiple assignments of error on appeal, some of which we will discuss together because they overlap. First, she argues that the circuit court erred in terminating her parental rights to E.D. without first adjudicating E.D. as an abused or neglected child and without adjudicating her as an abusive or neglectful parent to E.D. Second, the petitioner asserts that the circuit court erred in terminating her parental rights without requiring the DHHR to prepare and file a formal, written family case plan. Third, she contends that the evidence does not support termination of her parental rights and the circuit court failed to make the findings required by the disposition statute to terminate rights. We will address each of these issues below.

---

[9] *See* W. Va. Code § 49-4-604(c)(6) (2020), discussed *infra*.

**A. Termination of parental rights to E.D. without adjudication.**

The petitioner argues that a circuit court must first adjudicate a child as abused or neglected, and a parent as abusive or neglectful, before the court may proceed to the disposition phase of the case. Here, immediately after E.D. was born, the DHHR filed a second petition adding allegations of abuse and neglect of E.D. The circuit court announced that during the hearing set for August 24, 2020, the court would take up adjudication with respect to E.D. and disposition with respect to I.D. However, at the August 24 hearing, which was carried over to September 17, 2020, the circuit court never held an adjudication regarding E.D. Instead, the court proceeded directly to the disposition of the petitioner's parental rights to *both* children.

In response to this assignment of error, the DHHR argues that the record supports the finding that the petitioner is unable to parent E.D. Nonetheless, the DHHR acknowledges that the statutes require an adjudication before moving to disposition. Accordingly, the DHHR has no objection to remanding this matter to the circuit court to allow an adjudication with regard to E.D.

The law on this issue is clear. West Virginia Code § 49-4-601 (2019) specifies the purpose and procedures for adjudicatory hearings, including what findings a circuit court must make to proceed:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*Id.* at § 49-4-601(i), in part. This statute uses the mandatory word "shall" when directing the court to make the adjudicatory findings. A dispositional hearing is then "held *after* a child has been adjudged to be abused and/or neglected[.]" W. Va. R. of Pro. for Child Abuse and Neglect, Rule 3(i) (2019), in part (emphasis added). *See also*, W. Va. Code § 49-4-604. This Court has long held that

> "[i]n a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code, 49-6-5 [now codified at § 49-4-604], it must hold a hearing under W. Va. Code, 49-6-2 [now codified at § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

Syl. Pt. 3, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019).

The adjudication and disposition constitute a "two-stage" or "two-phase" process that "is well-recognized in our case law." *Id.* at 693, 827 S.E.2d at 835. "The *first* phase culminates in an adjudication of abuse and/or neglect. [*See* section 49-4-601]. The *second* phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. [*See* section 49-4-604]." *A.P.-1,* 241 W. Va. at 693, 827 S.E.2d at 835 (footnote and citations omitted). There are jurisdictional and constitutional concerns mandating this two-phase approach:

> [T]he primary purpose of making an initial finding of abuse or neglect is to protect the interest of all parties and to *justify the continued jurisdiction* of the court. The two-stage process supports the constitutional protections afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Indeed, with regard to minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

*Id.* at 693-94, 827 S.E.2d at 835-36 (quoting *In re K.H.*, 2018 WL 6016722, at *5 (memorandum decision)).

In both *In re A.P.-1* and *In re K.H.*, this Court vacated dispositional orders that had been entered without the benefit of a prior adjudication, and remanded the cases for further proceedings. *A.P.-1*, 241 W. Va. at 695-96, 827 S.E.2d at 837-38; *K.H.*, 2018 WL 6016722, *6. Additionally, in syllabus point 5 of *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001), the Court explained that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

In accordance with this precedent, we vacate the circuit court's November 6, 2020, order terminating the petitioner's parental rights to E.D. and remand this matter to the circuit court to hold an adjudicatory hearing and make the appropriate findings.[10] If E.D. is adjudicated as an

---

[10] We recognize that, at first blush, it may appear to be a waste of time to vacate and remand E.D.'s disposition order, when we have found that the evidence justifies termination of the petitioner's parental rights to I.D. *See* discussion, *infra*. However, we cannot ignore the jurisdictional and constitutional errors as a result of the circuit court's failure to adjudicate before moving to disposition for E.D.

abused or neglected child, and the petitioner is adjudicated as abusive or neglectful of E.D., then the circuit court shall expeditiously hold a dispositional hearing.[11] This ruling applies only to the dispositional order for E.D. inasmuch as there was a proper adjudication for I.D.

**B. Lack of a formal child and family case plan filed with the court.**

Next, the petitioner argues that the circuit court erred by terminating her parental rights without requiring the DHHR to prepare and file a written child and family case plan with the circuit court. West Virginia Code § 49-4-408 (2015) directs that the DHHR

> shall develop a unified child and family case plan for every family wherein a person has been referred to the department after being allowed an improvement period or where the child is placed in foster care. The case plan must be filed within sixty days of the child coming into foster care or within thirty days of the inception of the improvement period, whichever occurs first.

*Id.* at § 49-4-408(a), in part. The DHHR convenes an MDT, which develops the case plan. *Id.* at § 49-4-408(b). "Parents, guardians or custodians shall participate fully in the development of the case plan," and "[t]he case plan may be modified from time to time to allow for flexibility in goal development, and in each case the modifications shall be submitted to the court in writing." *Id.* Similarly, West Virginia Code § 49-4-604(a) requires the DHHR to "file with the court a copy of the child's case plan, including the permanency plan for the child." A case plan should be designed to set forth steps for the parent to follow to address his or her problems:

> "The purpose of the family case plan as set out in W. Va. Code, 49-6D-3(a) (1984) [subsequently amended and later re-codified into W. Va. Code § 49-4-408 (2015) and § 49-4-604 (2020)], is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. W. Va. Dept. of Human Services v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987), superseded by statute on other grounds as stated in *State ex rel. Virginia M. v. Virgil Eugene S. II*, 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553 n.9 (1996).

Syl. Pt. 3, *In re M.M.*, 244 W. Va. 316, 853 S.E.2d 556 (2020). "[W]hen an improvement period is authorized, then the court by order shall require the Department of Human Services to prepare a family case plan pursuant to W. Va. Code, 49-6D-3 (1984) [now § 49-4-408]." *Cheryl M.*, 177 W. Va. at 688, 356 S.E.2d at 181, syl. pt. 3, in part. The petitioner argues that the DHHR failed to comply with these requirements.

---

[11] Our ruling today does not mean that E.D. should be returned to the petitioner's care and custody pending adjudication. For the safety of the child, the circuit court's current placement of E.D. shall remain in effect unless the circuit court determines that a change is appropriate.

The DHHR and GAL respond that it is uncertain whether a case plan was ever filed with the court, but there is clear evidence in the record that the MDT developed a case plan and the petitioner knew the plan and was aware of what was required of her to regain custody. The DHHR argues that there are twenty-five references to a case plan in the appellate appendix record. For example, when asking for an extension of the improvement period, petitioner's counsel told the court that he had explained to his client the importance of following her "case plan." During the disposition hearing, the mother testified about what she had done to "succeed[] in [her] case plan." Furthermore, the record contains multiple DHHR summaries, and at least one MDT Summary, detailing the petitioner's compliance, or lack of compliance, with the plan. The January 22, 2020, MDT Summary specifically listed what the petitioner was required to do, and she personally signed this document.

In *Desarae M.*, this Court found reversible error when no family case plan had been formulated. *Desarae M.*, 214 W. Va. at 664-65, 591 S.E.2d at 222-23. However, unlike that case, there was a case plan developed for the petitioner in the proceedings below, even though it was not as formalized as it should have been. In addition to the many references in the record to a "case plan," the petitioner never objected to the lack of a more formal plan. During the review hearings, she never said she was unaware of what was expected of her.[12] Moreover, the DHHR provided the petitioner with case plan services including adult life skills and parenting classes, a parental fitness exam, drug testing, the opportunity for supervised visitation (if she had two clean drug screens), and drug rehabilitation.

To be sure, the case plan procedures used in this case were sloppy and not fully compliant with the statutory requirements. The DHHR and the circuit court are cautioned to more carefully follow the law in future cases to ensure that a case plan document is filed with the court. However, under the particular facts and circumstances of this case, we find that the failure to file a formal, written case plan did not substantially disregard or frustrate the abuse and neglect process. *See Edward B.*, 210 W. Va. at 624, 558 S.E.2d at 623, syl. pt. 5. Therefore, this is not prejudicial error warranting reversal.

**C. Termination of parental rights to I.D.**

The petitioner contends that the evidence presented at the disposition hearing does not support the termination of her parental rights. According to the petitioner, she had already addressed her drug usage, the DHHR failed to make reasonable efforts to reunify the family, and the DHHR failed to offer additional services to her after she was discharged from in-patient treatment. The DHHR and the GAL respond that there is extensive evidence supporting termination, including the petitioner's failure to pass or complete several drug screens, the failure to complete rehabilitation, and her continued minimization of her drug problem. Because we have already found that disposition of parental rights to E.D. was erroneous due to the lack of adjudication, we analyze these arguments only in the context of the termination of the petitioner's parental rights to I.D.

---

[12] For the first time at the dispositional hearing, the petitioner claimed that she knew she was required to go to drug rehabilitation but did not understand that she was required to *complete* drug rehabilitation. We agree with the circuit court that this claim lacks credibility.

Having reviewed the appellate record, we conclude that there was clear evidence to support the termination of the petitioner's parental rights to I.D. During her improvement period, the petitioner tested positive for amphetamines, methamphetamines, benzodiazepines, and she admitted smoking marijuana. She missed several drug screens and failed to fully participate in adult life skills and parenting classes. She was unable to exercise visitation with I.D. because of her lack of two clean drug screens. She failed to enroll in the PROACT program and was discharged from the Huntington Addiction Wellness Center after showing a lack of willingness to participate in the services. At the adjudication hearing and all the way through to the disposition hearing, the petitioner denied having a drug problem, despite all evidence to the contrary. Although the DHHR did not offer additional services after she was forced out of inpatient rehabilitation, the petitioner's extended improvement period had already expired and the case was set for disposition. Accordingly, there was no error in the circuit court's decision to terminate the petitioner's parental rights to I.D.

Finally, the petitioner points out that the circuit court's written disposition order for I.D. fails to include the findings required by statute for the termination of parental rights, specifically, that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination is "necessary for the welfare of the child[.]" *See* W. Va. Code § 49-4-604(c)(6). While the petitioner's observation about the disposition order is correct, it is obvious from a review of the record that this was merely a drafting oversight. During the disposition hearing, the circuit court expressly held that the DHHR had "carried the burden of proof required in these cases" and that it was in the "best interests of" I.D. that the petitioner's "rights be terminated." Accordingly, while we affirm the termination of the petitioner's parental rights to I.D., we also remand this case to the circuit court for the entry of a corrected disposition order that expressly uses the language required by the statute.

## IV. Conclusion

For the foregoing reasons, we affirm the circuit court's November 6, 2020, order terminating the petitioner's parental rights to I.D. but we nonetheless remand the matter to the circuit court for the entry of a corrected order that includes the required language for termination. We vacate the circuit court's November 6, 2020, order terminating the petitioner's parental rights to E.D. and remand the matter for an adjudicatory hearing followed by a new dispositional hearing. The circuit court is directed to expedite these matters. The Clerk of Court is directed to issue the mandate forthwith.

Affirmed and remanded, in part, and vacated and remanded, in part, with instructions.
Mandate to issue forthwith.

**ISSUED:** November 16, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

11