# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**October 16, 2024**

released at 3:00 p.m.
C.CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.D.**

**No. 23-148** (Wood County CC-54-2022-JA-171)

## MEMORANDUM DECISION

The petitioner Mother M.D.[1] appeals the Circuit Court of Wood County's February 21, 2023 order terminating her parental rights to H.D.[2] She asserts that the circuit court erred in terminating her parental rights when the DHS failed to develop a family case plan and did not provide the petitioner with a meaningful improvement period. She also argues that the circuit court failed to properly conduct the dispositional hearing and that the DHS did not prove by clear and convincing evidence that termination of her parental rights was the appropriate dispositional alternative. Upon our review, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In June 2022, the DHS filed a petition alleging that the petitioner neglected her newborn child, H.D., by failing to obtain adequate prenatal care and abused and neglected H.D. by using methamphetamine while pregnant. The petition included allegations that the petitioner attended only one prenatal medical appointment and admitted that she used methamphetamine approximately three times a month, including one week prior to her

---

[1]The petitioner appears by counsel Lauren Estep. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Caleb A. Seckman. Counsel Keith White appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

admission to the hospital for H.D.'s birth. The petition also asserted that she tested positive for amphetamine at the hospital when H.D. was born.

In July 2022, the circuit court held an adjudicatory hearing where, after the petitioner stipulated to abusing and neglecting H.D., the court referred the petitioner to family drug treatment court ("FTC").[3] At the hearing, the petitioner stipulated to neglecting her child by failing to obtain adequate prenatal care and to abusing and neglecting H.D. by using methamphetamine during her pregnancy. She also admitted that H.D.'s umbilical cord blood tested positive for methamphetamine. The petitioner's written stipulation included that she was willing to cooperate with the DHS and "participate in an improvement period to address her deficiencies in order to be reunited with her child." In the stipulation, the "issues and deficiencies to be addressed" included parenting skills, adult life skills, drug screening, substance abuse evaluation, and individual therapy. The stipulation also stated that "[a multidisciplinary team ("MDT") meeting] will be held to agree upon the terms and conditions of [the petitioner's] improvement period." The court explained during the hearing that "in an improvement period or [FTC], you're going to address parenting skills, adult life skills, psychological evaluation, parental fitness evaluation, [and] follow the recommendations." The court noted that the petitioner would be required to participate in drug screening and "have a substance abuse evaluation, follow the recommendations, and . . . get involved in individual therapy and other issues to be determined by the MDT or the [FTC.]" The petitioner agreed that she would follow the MDT or FTC "directions and recommendations" and that she understood she had the responsibility "to complete the improvement period and/or [FTC]." The court also noted that the petitioner would receive "much greater supervision" in FTC, and she needed "to stay in touch with anybody involved in [her] case, including [her] attorney, service providers, the Department, and the [FTC]." She indicated that she understood the requirements. In the following adjudicatory order, the court found that, based upon the stipulation, H.D. was an abused and neglected child and the petitioner was an abusive and neglectful parent. The court determined that "the issues and deficiencies" in the stipulation "should be addressed through a six-month post-adjudicatory improvement period which shall include [FTC]."

The DHS filed a September 2022 report with the circuit court detailing the petitioner's progress in FTC and noting that at the single drug screen the petitioner attended, she tested positive for methamphetamine, failed to attend other drug screens, and admitted to using methamphetamine on other occasions. According to the report, while the petitioner attended a few visitations, she failed to set up parenting and adult life skills

---

[3] In accordance with West Virginia Code § 62-15B-1(b), "[f]amily drug treatment courts are specialized court dockets within the existing structure of West Virginia's court system offering judicial monitoring of intensive treatment and strict supervision of individuals with substance use disorder involved in a child abuse and neglect case pursuant to § 49-4-601, et. seq."

classes and expressed a desire to leave FTC to participate in a traditional improvement period instead. At the September review hearing, according to the corresponding order, the circuit court ordered the petitioner to continue the improvement period and FTC.[4] The court also admitted the DHS report and an FTC report into evidence without objection.

In October 2022, the circuit court received an FTC case coordinator report regarding the petitioner's FTC participation. The report stated that the petitioner attended intensive outpatient classes but missed some classes, and after the petitioner became ill with COVID, she did not return for outpatient services. She also failed to start parenting or life skills classes, had two positive drug screens in August and September, and only minimally visited with H.D. due to both illness and her failure to verify sessions. While the petitioner agreed to enter a crisis stabilization unit, she had medical issues requiring her admission to a hospital. After her hospital release, she failed to report back to FTC or the DHS worker and never entered treatment. Ultimately, FTC discharged her for noncompliance at the end of October.

In November 2022, the circuit court received a report from a DHS worker noting the circumstances of the petitioner's discharge from FTC and stating that the petitioner had only two visitations with H.D. in October. The report observed that while the petitioner accepted a bed for a thirty-day program at a treatment facility following her FTC discharge, she did not see the value in going to a sober living program after treatment and instead planned to return to the same place where she resided before treatment. The DHS recommended that the court schedule a dispositional hearing.

After receiving the updated report, the circuit court held another review hearing in late November 2022.[5] According to the corresponding order, the court admitted a DHS report and an FTC report into evidence without objection, as well as a CASA report.[6] The court also ordered the petitioner to continue drug screening at the day report center, and, if her screens were negative for controlled substances, she could restart visitation. The order scheduled a dispositional hearing in January 2023.

---

[4] The appendix did not include the transcript from this hearing.

[5] The appendix did not include the transcript from this hearing.

[6] As the Court explained in *In re Nelson B.*, 225 W. Va. 680, 683 n.2, 695 S.E.2d 910, 913 n.2 (2010) (per curiam), CASA stands for Court Appointed Special Advocate. Rule 52 of the Rules of Procedure for Child Abuse and Neglect Proceedings describes the CASA's primary role as advancing "the best interests of the child until further order of the court or until permanent placement of the child is achieved."

During the January 2023 dispositional hearing, which the petitioner did not attend, the circuit court received two exhibits: a CASA report and a DHS dispositional report. The CASA report recited the petitioner's unsuccessful participation in FTC, documented that the petitioner had only two supervised visits with H.D. in October 2022, and explained that she completed a treatment program after her FTC discharge, yet failed to participate in any services after the program. The DHS dispositional report similarly restated the petitioner's FTC experience, including multiple positive drug screens, limited visitations, nonparticipation in classes, and the rejection of inpatient treatment. The DHS report acknowledged the petitioner's participation in a treatment program after her dismissal from FTC, yet also recognized that, after the November 2022 review hearing where the court provided she could restart visitations with H.D. after drug screens with negative results, the petitioner rejected her opportunity to begin screening and resume visitations.

At the beginning of the dispositional hearing, the court marked the documents as joint exhibits C1 and C2. The court asked whether there were any objections to the exhibits, and the petitioner's counsel responded "No, Your Honor." The court admitted the exhibits "without objection."

Also at hearing, the petitioner's attorney explained that she had "not been able to get in touch with [the petitioner] since the last hearing[.]" The DHS acknowledged that it did "not have any actual evidence," but instead would make "brief argument." Still, the DHS asked the circuit court to "take judicial notice of the entire case file including all prior reports and pleadings," and its arguments for termination included that the petitioner was accepted into FTC; repeatedly tested positive for methamphetamine and failed to appear at other drug screenings; stopped visiting H.D. in October 2022; failed to follow up with drug screening at a day report center after completing a treatment program; last contacted the DHS in mid-December; and failed to appear at the hearing. The DHS concluded that there was no reasonable likelihood that the issues that led to the filing of the petition could be corrected in the near future. After requesting that the petitioner's rights be terminated, the DHS argued that the court should also deny post-termination visitation, as the petitioner and the child had no bond. The petitioner's counsel did not argue against termination or claim that the DHS failed to meet its burden and did not further add to the record.

The circuit court "took notice of all exhibits," including the exhibits submitted at the dispositional hearing, and took "judiciary note of the entire file." The court ultimately found that the petitioner failed to participate in services or address conditions that led to the petition's filing, had positive drug screens, had no visitations with the child since October 2022, and was discharged from FTC. While the petitioner received a referral to the day report center for drug screening, she never appeared there. The court found that there was no reasonable likelihood the petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. In its dispositional order, the court found that the DHS made reasonable efforts to

reunify the family by providing services. Accordingly, the court terminated the petitioner's parental rights.[7] The petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). We first address the petitioner's argument that the DHS failed to develop a family case plan, provide her with a meaningful improvement period, and preserve the family. We next address her evidentiary argument relating to the termination of her parental rights, where she claims that the circuit court erred by failing to comply with the West Virginia Constitution, Rule 35(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings, and West Virginia Code § 49-4-601 relating to evidentiary hearings and the right to be heard in child abuse and neglect proceedings. Finally, we address her argument that the DHS failed to prove by clear and convincing evidence that termination was appropriate.

The petitioner argues that the circuit court erred in terminating her parental rights because the DHS failed to develop a family case plan after granting her an improvement period. The petitioner correctly states that after the granting of a post-adjudicatory improvement period, the DHS must file a family case plan within thirty days, which did not occur below. *See* W. Va. R. P. Child Abuse & Neglect Proc. 37; W. Va. Code § 49-4-408. However, the petitioner fails to establish how she was prejudiced in any way by the DHS's failure to prepare a family case plan. Her stipulation to the abuse and neglect of her child included specific issues and deficiencies to be addressed, including parenting skills, adult life skills, drug screening, and therapy. The court granted a six-month post-adjudicatory improvement period that included the petitioner's participation in FTC. The petitioner engaged only minimally in FTC. FTC provided her with the opportunity to enter treatment, attend parenting and life skills classes, have visitations with H.D., and receive therapy. Yet, instead of availing herself of these opportunities, she failed to enter treatment after being ordered to do so, failed to schedule classes, infrequently visited H.D., and FTC ultimately discharged her due to her noncompliance. Although she completed a thirty-day drug treatment program after discharge from FTC, she failed to drug screen even after the November 2022 court order requiring clean screens to restart visitation. Despite the fact that she reached out to the DHS worker regarding the referral to drug screening after the November review hearing, she did not follow up and drug screen. The record reflects that the court advised the petitioner of its expectations, so she knew what was required to successfully address the conditions of abuse and neglect. Furthermore, the petitioner does not argue that she was confused or unaware of the court's expectations of her during the improvement period. "'The purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.'" Syl. pt. 2, in part, *In re Desarae M.*, 214 W. Va.

---

[7]The father of H.D. relinquished his parental rights, and the permanency plan for this child is adoption in his current placement.

5

657, 591 S.E.2d 215 (2003) (per curiam) (quoting Syl. pt. 5, in part, *State ex rel. Dep't of Hum. Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987), *superceded by statute on other grounds as stated in State ex rel. Virginia M. v. Virgil Eugene S. II*, 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553 n.9 (1996) (per curiam)). Because the petitioner understood the requirements to remedy the conditions of abuse and neglect, we find that vacation of the dispositional order is not warranted for failure to prepare a family case plan under the specific circumstances of this case. *See* Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001) (requiring vacation of dispositional orders when the process of abuse and neglect proceedings has been "substantially disregarded or frustrated"); *see also In re P.P.*, No. 22-0168, 2022 WL 4355450, at *2 (W. Va. Sept. 20, 2022) (memorandum decision) (affirming the termination of parental rights when the DHS filed a case plan five months late and finding that the petitioner knew "the steps necessary to remedy the conditions of abuse and neglect").

Relatedly, the petitioner argues that the DHS failed to make reasonable efforts to reunify the family. Certainly, West Virginia Code § 49-4-601(d) requires the DHS to "provide supportive services in an effort to remedy circumstances detrimental to a child" immediately upon the filing of the petition, and the circuit court must consider "whether or not the [DHS] made reasonable efforts . . . to preserve the family" prior to terminating a parent's parental rights. W. Va. Code § 49-4-604(c)(6)(C)(iii). The petitioner claims that DHS failed to offer services after FTC discharged her, yet after she completed a thirty-day treatment program following that discharge, the petitioner failed to check in with the DHS worker. Furthermore, after November 2022 hearing, the DHS worker set up screenings for the petitioner at the day report center. Still, the petitioner failed to report for drug screening even after she confirmed via text message with the DHS worker that she could screen, and despite the court's direction at the November 2022 hearing that she could resume visitation with H.D. after producing clean drug screens. For these reasons, we find no error in the circuit court's determination that the DHS made reasonable efforts to reunify the family.

We also find no error in the circuit court's method of considering evidence and conducting the dispositional hearing. The West Virginia Constitution and West Virginia Code § 49-4-601 "'prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing.'" Syl. pt. 3, in part, *In re T.S.*, 241 W. Va. 559, 827 S.E.2d 29 (2019) (quoting Syl. pt. 2, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)). West Virginia Code § 49-4-601(h) also requires that, in an abuse and neglect proceeding, a court must provide a party who has parental rights "a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Rule 35(b)(1) of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings also requires an evidentiary hearing. Still, at disposition, the DHS has no requirement to employ a "'particular manner or mode of testimony or evidence'" to meet its burden regarding the child's final placement. *In re K.S.*, 246 W. Va. 517, 526, 874 S.E.2d 319, 328 (2022) (quoting Syl. pt. 1, in part, *In Interest of S.C.*, 168 W. Va. 366, 284

S.E.2d 867 (1981)). The DHS's burden must be met through "affirmative evidence presented or adopted by the party with the burden of proof—[the DHS]—upon which the circuit court may base its disposition." *Id.*

The petitioner argues, for the first time on appeal, that because the circuit court received only reports and the DHS presented no sworn evidence at the dispositional hearing, she was denied her constitutional right to due process because counsel was unable to cross-examine any witnesses against her. She also argues that the termination lacked evidence, as there was no sworn testimony in any of the proceedings, except her own testimony at adjudication, and the reports presented to the court were based on oral statements of third-party service providers and her admissions relating to drug use lacked details. The petitioner relies primarily on *In re C.E.*, No. 20-0814, 2021 WL 1549970, at *2-*3 (W. Va. Apr. 20, 2021) (memorandum decision), where this Court reversed and remanded an order terminating parental rights where the DHS presented no evidence or sworn testimony at a dispositional hearing, only proffered evidence to the circuit court, and the petitioner was not allowed to "make any argument or provide evidence." Here, however, the petitioner's attorney *agreed* that the circuit court could admit exhibits into evidence, which the court then made part of the record and specifically considered. Moreover, unlike the petitioner in *In re C.E.*, the petitioner here makes no allegations that she sought to put forth witnesses or testify but that the circuit court prohibited her from doing so. *In re C.E.*, 2021 WL 1549970, at *2. Rather, "[t]here is nothing in the record to show that petitioner wished to testify or present witnesses but was prevented from doing so," and "the fact that no witnesses were called during the hearing does not equate to a violation of [the] petitioner's right to be heard." *In re L.L.*, No. 19-0846, 2020 WL 5652417, at *4 (W. Va. Sept. 23, 2020) (memorandum decision). Here, the petitioner "ignores the fact" that the reports were "admitted into evidence below." *Id.* at *5. Thus, based upon the record before us, the circuit court did not violate her rights to a hearing or to cross-examine witnesses.

Finally, we also find no error in the circuit court's termination of the petitioner's parental rights. *See* Syl. pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (requiring "clear, cogent and convincing proof" to support a court order terminating parental rights). The petitioner's argument regarding her termination relies on her previous argument that the DHS presented no evidence to the court, in turn contending that the DHS failed to meet its burden of proof to support termination.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental and custodial rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is "necessary for the welfare of the child." West Virginia Code § 49-4-604(d) adds further guidance and provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "the abusing adult or adults have demonstrated an inadequate capacity to solve problems of

abuse or neglect on their own or with help." This subsection also provides a nonexclusive list of circumstances where these conditions exist, including when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3). As we recognized above, at the dispositional hearing, the circuit court admitted the DHS report and the CASA report into evidence, with no objection, and the court admitted other reports into evidence earlier in the proceeding. Based on these reports, the court found that the conditions of drug use that started the case continued, as the petitioner had repeated positive drug screens and failed to attend other drug screens, and while she had many opportunities for treatment, she ultimately failed to go to the day report center for further drug testing and failed to successfully complete her improvement period. Other evidence showed that she was given the opportunity to drug screen again but failed to attend any of those drug screens. *See In re L.L.*, 2020 WL 5652417, at *5 (recognizing that the record contained clear and convincing evidence supporting termination when the circuit court admitted a guardian's report into evidence that "contained evidence that [the] petitioner failed to comply with the terms and conditions of her case plan, despite several months in which to demonstrate her willingness to correct the conditions of abuse and neglect"). Further, as the Court recognized in *In re L.L.*, the petitioner's failure to visit with the child weighs in favor of termination. *Id.* at *5 ("'[W]e have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child.'" (quoting *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996)). Accordingly, the record contains clear and convincing evidence to support the court's termination of the petitioner's parental rights, and we find that the petitioner is entitled to no relief.[8]

---

[8] The petitioner makes a brief and conclusory procedural due process argument relying on *State ex rel. W. Va. Department of Human Services v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987), *superceded by statute on other grounds as stated in State ex rel. Virginia M. v. Virgil Eugene S. II*, 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553 n.9 (1996) (per curiam). She claims her due process rights were violated because she was a denied a meaningful improvement period with no family case plan and that no clear and convincing evidence supported termination. We find that argument has no merit because we find that the petitioner understood the requirements to remedy the conditions of abuse and neglect and does not claim otherwise, and clear and convincing evidence supported the termination of the petitioner's parental rights. *See In re A.S.-1*, No. 16-1215, 2017 WL

Thus, for the foregoing reasons, we find no error in the decision of the circuit court, and its February 21, 2023 order is hereby affirmed.

Affirmed.

**ISSUED**: October 16, 2024

**CONCURRED IN BY**:
Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

2628566, at \*4 (W. Va. June 19, 2017) (memorandum decision) (rejecting the petitioner's claim relying on *Cheryl M.* when the petitioner "[did] not contend that he was denied an improvement period or that he lacked a clear understanding of the goals he was to accomplish to correct the conditions of abuse and neglect," although a family plan was eventually filed).